Dr. Lee has a kind take on this subject.  professor by training, codes of practice that the Okay the next case is number 157051 Dixon against McDonald. Ms. Jarrett, when you're ready Good morning, your honors. May it please the court. My name is Holly Starrett and I represent the appellant Karen Dixon in this matter. The threshold question for this court is whether the veterans court had the authority to bypass or override the secretary's deliberate waiver in this case. Mrs. Dixon and the secretary agree that the facts warranted an application of equitable tolling. Mrs. Dixon and the secretary disagree, however, as to whether the veterans court got it right with respect to the waiver issue. We submit there's three reasons why the veterans court was wrong with respect to this waiver issue. Three interrelated reasons. The first reason is controlling precedent from the United States Supreme Court in the Day versus McDonough and the Wood versus Milliard decisions which discuss the issue of waiver. The second reason is the principle defined as principles of party presentation which mean the ability of parties to raise the issues and defenses that they want the court to hear and to act as a neutral arbiter about. And the third reason is the very nature of the veterans benefit system itself which this court and the Supreme Court has been very clear in describing as a pro-claimant, pro-veteran system. It's for those three interrelated reasons that we believe the veterans court got it wrong when it said that it had the authority to bypass the secretary's deliberate waiver. So I'll address each of those reasons in turn here. Let me begin with the Wood decision from 2012. You see Day as a forfeiture case and Wood as a waiver case? That's exactly correct, Judge Chen. So in Day... If we were to do apples to apples to veterans courts inquiries about equitable tolling, would you think that same distinction between forfeiture and waiver applies in the veterans court context? Well, yes. I think that result is frankly dictated by this court's opinion in Checo which said that the veterans court can sua sponte raise an issue of timeliness. Similarly, in Day and Wood, in both those cases the Supreme Court said, yes, the lower court, either the district court or the court of appeals could sua sponte raise the issue of timeliness. But in the Wood case which directly addressed a deliberate waiver by the government, the Supreme Court there reiterated what was said in Dicta and Day which is the court is without authority to override, bypass or ignore the deliberate waiver. And here I think there's no question that the secretary has deliberately waived the equitable tolling defense. I mean, the secretary made that clear in his briefing to the veterans court and the government on appeal here has agreed that that's exactly what the secretary did below. So in the Day and Wood cases, I would say are incredibly instructive to this court because this court has previously said in the Snead v. Shinseki case and in the Bailey v. West case that it's loathe to treat with less solicitude veterans than it treats habeas petitioners. That it will treat veterans with at least as much solicitude as it treats habeas petitioners. Which case was that? The Snead v. Shinseki case from I believe that was 2011 or thereabouts in the Bailey v. West 1998. And so I think for that reason, those Day and Wood cases are frankly controlling on this court. The second reason I would contend that the veterans court got it wrong is this idea of the principle of representation. And as I was saying, that principle suggests that the parties, and in this case the government, should know and is knowledgeable and is responsible for knowing what they're doing. They make choices to bring those issues and those defenses that they want the court to hear. And they are tasked with that responsibility and they frankly are the ones with the most knowledge about the case. I mean here the secretary has had this case, this appeal was brought as far back as 2008. So they've had a considerable length of time to consider the facts in this issue and they made the choice, the because what the Supreme Court has said in another case, the Vantage Financial, is that administrative agencies are presumed to make their choices in good faith, they're presumed to make those choices fairly, they're presumed to do them correctly, and they're presumed to do them with knowledge of the law and the regulations. What about all the concerns that Chief Judge Kassel pointed to in his Bove decision and the underlying decision here? Your Honor, respectfully, I don't think any of those reasons warrant, one, ignoring the precedent from the Supreme Court, and two, I think frankly that they're without a strong basis. I mean one of the reasons he raises, Judge Kassel raises, in the order below and in the Bove decision which he wrote, is that the secretary would have unwarranted discretion. As far as I'm aware, waiver does not happen very often. But where it does, where the secretary has made a choice for the benefit of a veteran, I don't see a basis why we wouldn't want to grant that discretion to the secretary. Again, for all the reasons we've been discussing, it just doesn't make sense. And I think it also doesn't make sense in the context of the veterans benefit system. I mean this court has been clear for a long time and the Supreme Court has been clear as recently as 2011 in the Henderson v. Shinseki decision that this is a very, the veterans benefit system is a very unique system. It's a pro-claimant system. It's a pro-veteran system. It's a system that reflects Congress' longstanding solicitude to veterans. And in fact, the veterans court was established as part of the Veterans Judicial Review Act, the VJRA. And that act was intended to, quote, place a thumb on the scale in favor of veterans. The Henderson decision, of course, is the decision that found or held that 7266, the statute at issue in this case, is a quintessential claims processing rule. It's not a jurisdictional rule. Quintessential claims processing rules like this one are generally subject to waiver and forfeiture. Jurisdictional rules are not. What has been done in this case by the veterans court is essentially attach the last piece in this puzzle to convert what the Supreme Court has already called the claims processing rule back into a jurisdictional rule. And there's no precedent, frankly, anywhere to support taking away the Secretary's ability to waive this issue. Your Honors, what we're asking for here, and one last thing, what the Supreme Court said in Henderson, how they ended their opinion, was they saw no basis to attach the harsh jurisdictional tags to this Rule 7266. There's no basis, despite what Judge Kasold said in his order and in the Bove decision, to go ahead and do that. There's just no basis in the record. We explained in our briefing, and I can certainly touch on that more, but we explained in our briefing why each of the reasons that he raised in the Bove decision in this order just don't have any merit. So, Your Honors, what we're asking for in this case is fairly modest. We're not asking this court to find that Mr. Dixon is entitled to his veterans benefits and to award those veterans benefits to him. We're asking that this court simply order the Veterans Court to listen to the merits of Mr. Dixon's appeal, an appeal that he brought in 2008, nearly eight years ago. Your Honors, unless you have any other questions? I do have. What we see sometimes, here where the VA agreed to waive the matter of timeliness, but at the same time the appeal had been filed, was there any discussion, as we see sometimes, of remanding to the VA to take it up on the merits without going through the judicial process? Your Honor, just so I'm clear with your question, are you saying, did Judge Kessel ask us whether we were willing to go ahead and remand it back to the VA so they could look at the merits? Well, before it even got to that stage, here we have the VA agreeing to waive the question of timeliness. At that stage, one would assume that the VA had looked at the merits of the case and thought that it was worth looking into, but that didn't happen, is that right? Well, as far as I'm aware, no. The procedural posture of this case is slightly more complicated, because what happened is Mr. Dixon brought his appeal in 2008 prior to Henderson. It was found to be that the court said it was without jurisdiction because it was untimely. He brought it again in 2012 after the Bove and Shinseki decisions and said, I have a basis for equitable tolling, and at that point submitted a declaration from his secretary. The secretary also submitted a briefing at that point on equitable tolling. Actually, I'm not quite sure if they submitted a briefing at that point. I'm pretty sure they did. The court ruled that that declaration in Mr. Dixon's statement, the medical records were not sufficient to warrant equitable tolling, and that case was brought up to this court because the court had failed to present a clarifying declaration from his VA psychiatrist and had failed to extend the time so that they could get the claims file from the VA. At that point, when this court, Dixon won in 2012, said, yes, you're absolutely entitled to a clarifying declaration from your treating psychiatrist, and you should have been granted an extension of time. It was remanded back, and at that point, Judge Kasold asked for further briefing from the parties and some further evidence. The merits have never been looked at? That's correct, Your Honor. Unless the secretary tells you differently, the merits have never been looked at that we've seen. Okay. Let's hear from the government. Okay. Thank you, Your Honors. Mr. Srebnick. Good morning, Your Honors. May it please the court. We sympathize with Ms. Dixon in this case. We just cannot agree with her. You've been waived the equitable tolling defense. Absolutely, Your Honor. You agree it's a non-jurisdictional, timeliness defense. Yes, Your Honor, we do. The difference in our positions, I think. Are there examples of other courts that can sua sponte control and decide sua sponte non-jurisdictional timeliness defenses? Well, I think the Wood and the Day decisions both go in that vein, but there's an important distinction. Did you cite Wood in your red brief? We did not, Your Honor. We did not respond to it because- Judge Kasold didn't discuss Wood either. No. And the reason, Your Honor, is there's a very simple distinction between Wood and Day and what we have here and Checco. And that distinction is the fact that Wood and Day both dealt with statutory time periods. And here, this is what we believe is the critical point of Checco and the critical point that we make in our brief. Excuse me. The timeliness for filing an appeal to the Veterans Court is prescribed not only by 38 U.S.C. Section 7266, but also by Rule 4 of the Veterans Court's rules. And so what we're dealing with, as Checco recognized, is a time limit that functions as a matter of court rules in addition to the statute. And it is the authority, it is the court's authority to enforce its own rules that makes raising the timeliness issue sua sponte appropriate and also makes deciding it on its own. Would the Veterans Court be the only court that you know of where it could discard the waiver by the opposing party of a non-jurisdictional timeliness question and reach at the issue sua sponte? Is there any other court that does that? Because we know in habeas petitions that's not the case. Your Honor, I have two answers to that. The first is yes or no. I'm not aware of any case, however. So the Veterans Court would stand apart from every other court and every other context in the land in its ability to do this. Given the unique scheme and yes, I think it would stand apart. Given the unique scheme. What's the unique scheme? This is supposed to be a veterans-friendly statute. So the Secretary of the VA issues a veterans-friendly, let's say, discretionary, we know it's discretionary, it's not jurisdictional. And yes, this court does stand apart. But it seems to me that the government's position might be that it stands apart to favor the veteran, not the other way. To say no, we're not going to hear what you've been trying to get us to hear for all these years. Respectfully, Your Honor, I think the framework, the way we see this case, the framework of this case is a little different. And it's true that this is a non-jurisdictional time limit. But it is also not a statute of limitations. The reason that this court stands apart, and back to your question, Your Honor, the Veterans Court would stand apart, but it would stand apart because this time period, as Henderson recognized, it's not jurisdictional. But it's also not like a statute of limitations. Henderson, in fact, distinguished the procedures in ordinary civil litigation from the procedures in the veterans' context. And explicitly called this time period an important procedural rule. It's an important procedural rule. And for that reason, I think the time period is much more analogous to something like Rule 31. Is it basically a garden-variety claim processing rule, a classic claim processing rule? I think it slots somewhere between a statute of limitations and an affirmative defense, which is owned by the parties and prescribed by statute, and a jurisdictional rule, which is a limit on the court's authority to hear cases. I think it stands somewhere in between. And I think Henderson- Where did it say that? Where did the Supreme Court in Henderson say that? I guess I was perceiving it as rather binary. And you're suggesting, no, it's really a spectrum. And now we have this interesting in-between hybrid between jurisdictional requirements and classic claim processing. I think there's several places to- You have no- The theory that you're arguing is there's no precedent, is there? After Henderson, I think we all assume it's not jurisdictional. Proceed on the equities and on the merits. And so here we have the VA doing exactly the equitable thing, that we'll listen to you. And the court says, no, you won't. Your Honor, if I may, I have two responses to that. I think the precedent is actually Checo. I think Checo, the language of Checo and the reasoning of Checo, controls this case, as we explained in our briefs. And the reason is because Checo recognized that this time period, one of the reasons that it can be raised sua sponte, is that this is a time period that not only exists in the statute, but also exists in the rules and in the Veterans Court's rules. And Checo itself explicitly stated that Congress, quote, gave the Veterans Court broad discretion to prescribe, interpret, and apply its own rules. And there's a line of cases from this court- Checo was pretty careful too, because in the footnotes in Checo, it said, it doesn't have in front of it what we have in front of us now. Which is an expressed waiver by the VA. And so therefore, Checo never had any opportunity or a reason. And it actually carefully avoided addressing that question. And that's in front of us today. I think that's absolutely right, Your Honor. And that's why in our brief, we characterize this case as an extension of Checo. Checo does not address this factual circumstance. But the reasoning of Checo is what applies here. But doesn't Checo cite both Wood and Day, suggesting that Checo, at least, you know, there was no suggestion in Checo that Wood and Day wouldn't apply in a Veterans case? Your Honor, I believe it does. It certainly cites Day. I don't know off the top of my head whether it cites Wood. But again, as I indicated, there's critical distinctions between this circumstance and the circumstance presented in the habeas context. In the habeas context, the time period is controlled by statute. The Anti-Terrorism and Effective Death Penalty Act. And so the time period to file an appeal is prescribed by statute. And generally speaking, statutory time periods are statute of limitations. They're affirmative defenses. They're owned by the parties. When something is in a court rule, the court has authority and has increased power to control its own docket. And that's why I analogize this case to an instance when a party files an untimely brief in a court. For example, this court's Rule 31 prescribes the time period to file a brief. A party misses the time period, files a motion for leave to file its brief out of time with this court. I, as the government, say that I don't oppose. But that is not controlling on this court. It is the court's prerogative, its inherent authority to manage the cases that are before it and to decide that a particular waiver of a time period is or is not appropriate. And I think the flip side of what Ms. Dixon is advocating is that the Secretary could unilaterally require the Veterans Court to hear a case that under the Veterans Court's rules is untimely. Because I think another thing that's important to remember here is what the court's rules just implementing the statute. They absolutely echo the statute, Your Honor. That is true. Rule 4 parallels the language of Section 7266. But I think the fact that the court went through the process of incorporating that language, pursuant to the authority granted to it by Congress, pursuant to authority granted to it in 38 U.S.C. Section 7264A, demonstrates that in doing so, the court makes that time period part of its own, essentially something that it owns and it should administer. So would that be true for any court or other administrative tribunal where it processing limit from a statute incorporates it into some kind of regulation? Now that court or tribunal owns that statutory time limit in a way that it can now discard waivers of non-jurisdictional timeliness provisions? I think in theory, yes, Your Honor. The reason it wouldn't come up in practice, though, it wouldn't come up in practice. And the reason it wouldn't come up in practice is, there's several. One is that most tribunals hear more than one type of case. And so statute of limitations differ depending on the substance of the case that's presented. That's one. Two, the Supreme Court has made clear that generally the time periods to appeal from a district court to a circuit court is jurisdictional. So in a way, the veteran scheme is unique and not repeated in other contexts. Because everywhere else, the time to appeal a district court's decision is jurisdictional. And the court can't waive it. So in a sense, it's actually not that different. That's why I say that Henderson treads this middle ground between the kind of waiver that happens under the federal rules of civil procedure and the jurisdictional timelines that the court in Henderson flatly rejected. Can you show me where Henderson had said that? Because I was picking up the same signals as Judge Newman, which was the theme that we owe our veterans great solicitude when it comes to these disability benefits claims. And I think that is absolutely the gestalt of Henderson. The language on which I rely and which I'm referring to here begins on page, if I may beg the court's indulgence. Show us the language that says that the VA cannot waive equitably told the statute. I'm sorry, Your Honor, I didn't quite understand the question. If you're relying on Henderson, I certainly don't remember Henderson saying that the VA is prohibited from equitably tolling the statute of limitations, the timeliness requirement. There's certainly not that kind of language in Henderson. And I'm not suggesting that there is, Your Honor. What I'm suggesting is that- But isn't that what this case is about? The secretary makes a decision that it's entitled to make, clearly entitled to make, that favors the veteran. It says, all right, we'll hear your claim. The court comes in and says, you can't do that. And I need to understand, we give great respect to the Veterans Court. They're extremely competent. But this seems very strange to me. And particularly in the context, which is also in all the statutes, that these are supposed to be veterans-friendly provisions throughout. And yet to reverse the secretary and say you are prohibited from hearing this veteran's claim just seems extraordinary to me. Your Honor, respectfully, may I just respond to that? Because I think there's a slight- I think there may be a way that I can clarify the framework. What Ms. Dixon is seeking is not to have the VA hear its case. It's to have the Veterans Court hear its case. And so what happens is Ms. Dixon comes to the Veterans Court and says, please give me the benefit of equitable toll. The secretary, a party in this litigation says, we do not oppose that request. Court, it is up to you to determine whether you will hear it. And the court then- Why is it up to the court? Why doesn't that end it? Shouldn't there have been some request for dismissal or remand or whatever to consider the merits? Your Honor, actually, I don't believe that a remand would be appropriate. And the reason is because the right that Ms. Dixon is asserting is essentially a procedural right to have her claim heard. There was already a decision at the board. What she is seeking is a procedural right to have the Veterans Court review that decision. The Secretary of Veterans Affairs never said the initial decision of the board was wrong or we need to reconsider that or anything of that nature. What the secretary said was, based upon your circumstances, you should have another tribunal look at this. But the secretary can't look at it again. And the secretary can't force the court to look at it again. Why can't the secretary look at it again? We have seen quite often requests for voluntary dismissal, even by the time it gets here on appeal, so that the secretary can look at it again. Perhaps there's been something in the briefs that hadn't been flagged before, had been inadequately presented, or perhaps other considerations. I think I was- I apologize. I think I was imprecise. The secretary can ask to have something heard again, to reconsider something. But in this case, it's not believed that the board's decision was wrong. So there was no reason for the secretary to voluntarily go out and say, please, we want to reconsider this. What the secretary was trying to provide and assist the veteran in obtaining is a further level of review to which the veteran would be entitled  That's not unreasonable. Now we have the court saying, no, you can't do that. We won't look at it. I'm trying to understand the combination of where the equities are, because this was equitable tolling. The policy with respect to veterans and the complexities of the regional offices and the boards and the secretary and the special court and all the rest of it. To try and get it straight for the future? Certainly. As we- the short answer, Your Honor, is that as we read CHECO and as we read the Veterans Court's rules, it appears to us that CHECO's language gives the veteran court the discretion to manage its cases by not only raising, but also analyzing the questions of timeliness. And that is what the court did in this case. It was acting pursuant to Rule 4. You can't be telling us that the veteran system runs for the benefit of the court. We're not suggesting that the veteran system runs for the benefit of the court, but I think it's also important to- We haven't seen this anywhere except in this case. I mean, it's curious when one party waives a decision or a position that's in its favor for the court to say you can't waive. Your Honor, I think our position succinctly stated is that the Veterans Court is unique in some ways, but also has the attributes of other courts of primary jurisdiction and other courts of appeal in that it is a court that has the powers of law and equity, and it has inherent authority to manage its cases. All courts have that, but not on the backs of complainants who the courts are supposed to favor. Your Honor, again, I recognize that, we certainly recognize that Henderson and a whole line of cases establish a very pro-veteran regime in the substantive area of benefits. In this case, however, it does not strike us as a case of- If this were a case of benefits strictly presented, if this were a case of whether a certain presumption should attach, I think that characterization could have power. But because we're dealing essentially with a procedural rule of the court, the question starkly presented is whether the court should have authority to manage its cases in this particular way. You were going to give me a quotable quote from Henderson that you felt like gave us all a hint that maybe this court, this Veterans Court, could do what no other court can do in reaction in the face of a waived equitable defense. What is that quote? Yes, Your Honor, I have located it. So at page 562 U.S. 440, there is a discussion about the distinction between veterans litigation and ordinary civil litigation. And the court is discussing it to distinguish waiver- periods of appeal in ordinary civil litigation from the periods of appeal at issue here. And so there's a paragraph where the court talks about the contrast between ordinary civil litigation, which provided the context of our decision in Bowles, setting the jurisdictional limit for appeal, and the system that Congress created for the adjudication of veterans benefits. One of the things that the court mentions is that these cases are really not subject to the federal rules of civil procedure. There's an entirely different procedural- Where's the quote? I'm looking- Your Honor, I was not suggesting that there is a particular sentence. What I was suggesting is that this discussion, distinguishing veterans cases from ordinary civil litigation, which is the kinds of claim rules on which Ms. Dixon relies in arguing that not accepting waiver was improper, that sets part of the parameter. And then the second part is the court stating that the, quote, the 120-day limit is nevertheless an important procedural rule. It's a procedural rule. And procedural rules can be something that are prescribed by the court and administered by the court and are not just owned by the parties. In other words, what Henderson did is it distinguished this time period from an affirmative defense. It said this is not like an affirmative defense. An affirmative defense functions under the federal rules of civil procedure, Cheko itself recognized that these cases are not subject to the federal rules of civil procedure. Waiver under those claim rules is not appropriate. It's something else. It's some sort of in-between system. And I think the way that we look at the veteran court's opinion, Henderson, and this court's decision in Cheko, is that if the time to appeal, if this case were like any other case, any other appeal brought to an appellate court, there would be a hard jurisdictional cutoff on 120 days. And inequitable totally wouldn't even be possible. How often does a situation like this arise? In other words, it seems to me it wouldn't be very frequent that the Secretary would  It's not very frequent, Your Honor. Can you give us a little bit more detail? Your Honor, I'm not aware of other examples where this has happened. Well, I'll step back. It happened in Bove. Bove analyzed a set of cases which ran the gamut between waiver and non-waiver. And that's why Bove initially brought up this issue that the time period is not waivable. So it occurred there. It does not occur very often, certainly. One last question. As a general matter, is it correct that the Veterans Court or a clerk of the Veterans Court scours all of the appeals for possible untimeliness issues and then issues an order to both parties or just the veteran on questions of equitable tolling? Can you explain how that process works? Certainly, Your Honor. The process is described in Cheko. And my understanding of the process is that the court looks at the filed petitions for appeal and identifies any that are untimely and then gives the parties, the parties are presented an opportunity to either raise equitable tolling issues or the cases simply dismissed. That would be the time where the VA, if it wanted to, could elect to waive the defense. Yes. Yes, that could be a time. Okay.  Okay. Thank you. Thank you, Your Honor. Your Honor, my colleague here had a number of points about the difference between the statute that controls 7266 and the rule that controls, I think he was saying, Rule 4. There can't be any daylight between that statute and the rule. The Veterans Court certainly can't say, oh, the statute says 120 days, but we're only giving you 60 days. Like you said, Judge Stoll, they can maybe interpret that rule to allow equitable tolling, but they certainly can't interpret that rule to make it more difficult for the veteran to bring his notice of appeal. And in fact, the court has another rule. Actually, the Veterans Court, there's another statute that governs it that actually limits what the Veterans Court can hear. 7261A says the Veterans Court can hear issues when presented. When the secretary waived this equitable tolling issue, that issue was no longer presented to the Veterans Court. There was no basis at that point for a number of reasons, but also for the reasons stated in 7261A for it to continue on and to assess that question independently. And respectfully, as you were saying, Judge Newman and Judge Chen, and I think you as well, Judge Stoll, there's no ambivalence whatsoever in the Henderson decision. I don't think the Henderson decision left anything up to chance. Yes, it's an important procedural rule, but it is also a quintessential claims processing rule, and it is not to carry the harsh jurisdictional attributes as a jurisdictional rule. All that the Veterans Court has done is attach those harsh jurisdictional attributes to this statute that Henderson has already said cannot be applied. Well, to be fair, the Veterans Court's not treating this as a jurisdictional rule. It's obviously considering the possibility of equitable tolling. Yes, that's correct, Your Honor. But with a jurisdictional rule, you cannot waive or forfeit a defense. But with a claims processing rule, you can. And what I think we've learned from Day and Wood, and from other opinions like Eberhardt and Kontrick, is a party has every opportunity and every right to decide the issues that they want to bring forward. And in waiver, especially. We agree with you. Are we going to have to accept late-filed briefs if the other side doesn't oppose? Well, there's a distinction, I believe, that we discussed, Judge Chen, between waiver and forfeiture. So if, and I think my colleague's right, that typically the Veterans Court will raise the timeliness issues to a sponte, ask the parties to weigh in. If the Secretary said nothing, then I... I'm talking about the fact that Mr. Sverdlov pointed out that there are times where people don't file their briefs to this court on time. And then maybe the opposing party says, you know, we certainly don't oppose the fact that they filed their, you know, gray brief 90 days late. And then under the same reasoning that you have, wouldn't that mean that we would just have to accept that gray brief? Well, if, Judge Chen, if you're talking about an appeal to this court... Or a brief, we're just talking about briefs and the timelines and deadlines for filing briefs. Apologies. So if we're just talking a motion for extension of time, no, I think there is a very clear difference between the rule governing equitable tolling and a motion for extension of time, a motion as to word limits. Those latter issues, extension of time, word limits, that's all about the court running its own docket. But a notice of appeal, a timeliness defense, is a dispositive issue. If you lose on that issue, that's the end of it. You can't have your appeal heard. If you have, for example, gone over the word limits, okay, that's not a dispositive issue. So one is truly just the court rolling with its own docket versus another, which is a dispositive issue, which is a right of the party to do with what they see fit. If they don't want to present that issue, they don't have to present that issue. Okay, any more questions? Any more questions? Okay, thank you both. The case is taken under submission. Thank you.